IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 20-10096-TMD |
| JOSEPH BENINATI | § | |
| | § | CHAPTER 11 PROCEEDING |
| DEBTOR | § | |

### JOSEPH BENINATI'S RESPONSE AND OBJECTIONS TO THE JOINT MOTION TO CONTINUE AND EXTEND (I) DEADLINE TO OBJECT TO DEBTOR'S DISCHARGE; AND (II) RELATED DISCOVERY SCHEDULE

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUTPCY JUDGE:

NOW COMES Joseph Beninati, ("Debtor" or "Beninati"), by and through his attorneys, and responds and objects to the Motion to Continue and Extend (I) Deadline to Object to Debtor's Discharge; and (II) Related Discovery Schedule filed Jointly by the Chapter 7 Trustee's ("Trustee") and Sutton 58 Associates LLC ("Sutton" and together with the Trustee, "Movants") and would respectfully show the Court the following:

### PRELIMINARY STATEMENT

1. The Debtor established himself as a commercial real estate developer in New York City in approximately 2013. The Debtor and his partners developed a condominium development adjacent to the High Line Park in New York City. Along with his partners, he subsequently undertook development of a significantly larger and more ambitious development commonly known as Sutton Place.

2. Sutton Place was originally planned as a 68-story condominium tower. The proposed Sutton Place's zoning met with fierce opposition from community activists. Financial difficulties with its primary lender led to the failure of the project, a bankruptcy filing by the entity that owned the development and the loss of the Debtor's significant investment in Sutton Place.

3. The failure of the Sutton Place development resulted in the Debtor's financial demise. Financing for Sutton Place was provided by Sutton 58 Associates LLC ("Sutton"). The Debtor guaranteed obligations to Sutton. On or about January 12, 2017, Sutton obtained a judgment in the Supreme Court of the State of New York, County of New York against the Debtor in the original amount of $24,047,342.47, on account of his guaranty (the "Judgment").

4. Movant's motion is predicated on the fiction that the Debtor's financial affairs are complex, mysterious and unknown to the Movants. The suggestion that additional time is necessary to investigate the Debtor's financial affairs premised a litany of fabricated allegations of suspicious transactions coupled with the suggestion that Sutton has never had an opportunity to investigate the Debtor's finances. While the Trustee is new to this Debtor, Sutton and its counsel, who are now counsel for the Trustee, have intimate and long-standing knowledge of the Debtor's financial affairs and have conducted extensive and virtually unrestricted discovery prior to the filing of this Bankruptcy case, and have assuredly shared such discovery with the Trustee - represented by the same counsel.

### A. Sutton Has Conducted Extensive Post Judgment Discovery into the Debtor's Financial Affairs Commencing in 2017

5. Following entry of the Judgment Sutton, through its counsel, took aggressive action to enforce its Judgment. Initially, Sutton retained Bernard D'Orazio & Associates, P.C ("D'Orazio") to take steps to enforce the Judgment. D'Orazio enforcement actions included the following:

   a. subpoenaed the bank accounts of the Debtor, his wife and children at Wells Fargo Bank and Fidelity Investments in April-May 2017,
   b. froze the Debtor's son's 529 college account at Fidelity Investments in April 2017,
   c. froze the Debtor's IRA at Wells Fargo;
   d. served post judgment interrogatories on the Debtor's wife, which were responded to in June 2017,

  e. subpoenaed financial and accounting records from the Debtor's accounting firm Cohn Reznick. Cohn Reznick complied with the subpoena in November 2017 and delivered tax returns for 10 entities along with the Debtor's joint returns for tax periods dating back to 2012, and

  f. pursuant to a letter reserving privilege, Cohn Reznick produced additional accounting records of Persistence Partners IV, LLC ("P4")[1] the Debtor's wife and certain other entities that she owned.

  6. Prior to the Petition Date, Sutton was already in possession of thousands of pages of document discovery. Apparently finding nothing in voluminous discovery that indicated that there were any assets available to collect the Judgment from or third party claims to pursue, Sutton took no other action to collect the Judgment

  7. In September 2017, the Debtor and his family moved to Austin, Texas from their prior residence in Connecticut. As residents of Connecticut (and New York before that) all of their assets were owned as the separate property of the spouse holding title to the asset pursuant to applicable state law. Upon adopting Texas as their residence, the Debtor and his spouse entered into a Marital Property Agreement maintaining separate ownership of their existing and future assets and the income derived therefrom and as the ownership of those assets existed at the time they moved to Texas - in other words, there were no assets transferred or divided.

  8. Nearly two years passed after the Debtor moved to Austin before Sutton domesticated the Judgment in the 95th Judicial District of Dallas County, Texas in July 2019 ("Domestication Proceedings"). Sutton filed in Dallas County notwithstanding the fact that neither Sutton nor the Debtor ever had any contacts with Dallas County. Sutton served the Debtor with post judgment written discovery consisting of 78 requests for production and 88 interrogatories. Many of these requests duplicated discovery propounded by Sutton's prior New York and Connecticut counsel.

---

[1] P4 was formed and owned by the Debtor's wife as her separate property. That ownership was confirmed in connection with the Chapter 11 plan confirmed by P4 in the United States Bankruptcy Court for the District of Connecticut. The Debtor has never owned any interest in P4.

**DEBTOR'S RESPONSE TO MOTION TO CONTINUE**           **Page 3 of 11**

Sutton propounded similar discovery upon the Debtor's wife and entities she owned.

9. The Debtor contested venue for the Domestication Proceedings while contesting Sutton's discovery. Upon entry of an adverse ruling on his venue challenge as late filed, the Debtor filed his petition initiating this chapter 7 case.

### B. The Debtor Has Made Complete and Voluntary Disclosures Post Petition

10. The Debtor filed extensive and detailed Schedules and Statements of Affairs with his bankruptcy petition. Shortly after filing bankruptcy, counsel for the Debtor contacted the Trustee to make inquiry regarding any additional documents the Trustee might require. As requested, the Debtor turned over copies of tax returns, bank records and the Marital Property Agreement to the Trustee.

11. The Trustee hired Sutton's counsel in the Domestication Proceedings and therefore has actual or constructive knowledge and possession of three years of voluminous discovery taken by Sutton.

### C. Trustee's Counsel Allegations of Suspicious Transactions are a Pretext for an Unwarranted Delay

12. Trustee's counsel has relied upon allegations of suspicious financial transactions as a basis for further investigation and delay. Trustee's counsel knew or should have known that the allegations were false.

#### a. Sale of the Debtor's Connecticut Home

13. On February 24, 2020, the Trustee filed his application to Employ Conley Rosenberg & Menendez and Munsch Hardt Kopf & Harr, P.C. ("Application"). ECF #11. At paragraph 6 of the Application, the Trustee relies upon an alleged sale of the Debtor's Connecticut home in August 2017 as one such suspicious transaction. The Application is careful to advise the Court that the home

was 15,855 square feet, had an assessed value of over $8 million and was allegedly sold was within 4 years of the Petition Date.

14. The Application failed to advise the Court that Ms. Beninati was the record title owner of the property and that Citibank held the mortgage on the Connecticut home and had concluded its strict foreclosure upon that property in June of 2018. Neither the Debtor nor his wife received any consideration from the property.

15. Rather than evidencing some nefarious hidden asset, the Connecticut home evidences the reversal of the Debtor's financial fortunes resulting from the failure of the Sutton Place investment.

    **b. Austin Rent**

16. The Application also recites the rent on the Debtor's apartment in Austin, Texas and the difference between the monthly rent and the Debtor's disclosed income. The Debtor's wife is an attorney and accomplished businesswoman. Mrs. Beninati is the primary wage earner for the Beninati family and her earnings are her separate property as provided for in the Marital Property Agreement which the Debtor previously turned over to the Trustee. Contrary to the provincial thinking on display in the Application, Mrs. Beninati bears the bulk of the living expenses for their family, including their two college aged children and the Trustee and Sutton's joint counsel are well aware of that fact.

    **c. Foreign Income**

17. At Paragraph 9 of the Motion, the Trustee alleges that the Debtor reported gross income of over $16 million in 2017 on his Foreign Tax Credit schedule and inserted a copy of a portion of the Debtor's 2017 IRS Form 1116.

18. The obvious implication of the allegation in the Motion is that the Debtor has some suspicious source of undisclosed foreign income. All of the information necessary for the Trustee to determine that the implication is false is contained within the very form or the instructions for completion of that form. The IRS Instructions for Form 1116, line 3e state as follows:

> **Line 3e.** Enter on line 3e in each column your gross income from all sources and all categories, both U.S. and foreign. Include any foreign earned

19. The instructions for Line 3e of Form 1116 require the taxpayer to include all income, including US income. Even if the Trustee was not aware of the IRS instructions, a review of the Form 1116 "U.S. and Foreign Source Income Summary" ("Form 1116 Summary") would have revealed that all of the Form 1116 income was domestic. The Form 1116 Summary also disclosed that $13,272,251 of that income was derived from capital gains and offset by $13,275,251 of capital losses. An examination of the entirety of the Debtor's 2017 income tax return (as opposed to the "sound bite" allegation identified by counsel for the Movants) shows that the vast majority of this "capital gain" and loss was attributable to the failed Sutton Place project. All of which was known to Sutton and its counsel and disclosed in the thousand pages of document production from Cohn Reznick.

   d. **Guardian Life Insurance**

20. The Trustee presumes that the Debtor or his wife are the beneficiaries of an annuity which is not listed in the Debtor's schedules. The excerpt of the Debtor's 2018 tax return included in the Motion from "Statement 3" voluntarily provided to counsel for Movants is titled "Pensions and Annuities". The tax return captures this information from 1099-R's issued by Guardian Life to reflect distributions from pensions, annuities, retirement or profit-sharing plans, IRA's, and

*insurance contracts*.

21. The distributions reflected on Statement 3 report income from a whole life insurance policy issued by Guardian Life Insurance Company ("Guardian"), obtained by the Debtor prior to 2010. According to the Debtor's best recollection, the beneficiary of the Guardian life insurance policy was the Beninati Holding Trust U/A 9-6-2006[2]. In 2013 the Debtor borrowed $2.6 million from First Insurance Funding against the Guardian life insurance policy. Guardian assigned the policy to First Insurance Funding. The policy loan proceeds were used primarily to pay policy premiums and to cover interest on the policy loan.

22. Substantially all of the interest and dividends on the policy were applied either to policy premiums or interest and principal on the policy loan.

23. By 2018, the Debtor could no longer afford the policy premiums and the interest on the policy loan balance and had no more cash value against which to borrow. The Guardian life insurance policy was cancelled in June of 2018, approximately 19 months before the Petition Date and the cash surrender value paid off the policy loan balance.

24. The Debtor did not schedule any interest in the Guardian life insurance policy in his bankruptcy schedules because he did not own any interest in that policy and the existence of the policy and the revenue stream from the policy are not responsive to any question in the schedules or statements of affairs. Ms. Beninati owns no interest in the Guardian life policy either and contrary to the allegations in paragraph 11 of Movants' motion, there is no annuity income.

D. **The Rule 2004 Examinations**

---

[2] Beninati Holding Trust U/A 9-6-2006 was formed as a life insurance trust in 2006 to be the owner and beneficiary of the Guardian life insurance policy. The Beninati Holding Trust U/A 9-6-2006 had no other assets and the Debtor believes that the Trust was terminated in mid-2018 and therefore did not list it in his schedules. In an abundance of caution, the Debtor intends to amend his schedules to disclose the Beninati Holding Trust U/A 9-6-2006.

25. Trustee's counsel first approached counsel for the Debtor on February 27, 2020 and sent a proposed 2004 Examination Notice with an extensive duces tecum ("Debtor 2004 Notice"). ECF #12. Counsel for both parties conferred on several occasions regarding the scope of the duces tecum. On each occasion, counsel for the Trustee offered an extension of the response deadline, provided there was a commensurate extension of the bar dates for objection to exemptions and discharge. Debtor's counsel responded each time that the Debtor *did not* require additional time to comply with the Debtor 2004 Notice.

26. The Debtor timely served his response to the duces tecum and was prepared to produce responsive documents and attend the 2004 examination on the April 6, 2020 as set forth in the 2004 Notice.

27. Nearly one month later on March 19, 2020, Trustee's counsel served his notice of rule 2004 exam upon Guardian Life Insurance Company ("Guardian 2004 Notice"). ECF # 16. The 2004 examination of Guardian was scheduled for April 10, 2020, after the date originally set for the Debtor's 2004 examination

28. On March 24, 2020 Trustee's counsel sent an email request seeking to reschedule the Debtor's 2004 exam and document production, reschedule other discovery and extend the bar dates for objecting to exemptions and discharge (collectively, the "Bar Dates") for an additional two months until June 26, 2020. Debtor's counsel countered with a proposed extension of the Bar Dates through the end of May 2020.

29. During a conference of counsel to discuss rescheduling discovery and extending Bar Dates, Movants' counsel advised that they could not proceed with examinations of the Debtor or his wife until after Guardian Life produced documents requested under the Guardian 2004 Notice. Trustee's counsel advised that Guardian Life was unable to produce documents until May 15th at the

earliest due to disruptions caused by the Covid – 19 virus. Movants' counsel was advised that both the Debtor and Ms. Beninati were ready and willing to produce documents and attend the 2004 exam immediately.

30. Clearly this order of proceeding did not manifest itself until after the interruptions resulting from the Covid – 19 "stay at home" orders. Trustee's counsel had no issue scheduling the Debtor's or Ms. Beninati examination before Guardian's document production or examination. Trustee's counsel's sudden need to delay the examination of the Debtor and his wife until after Guardian's examination appears pretextual and designed to accomplish the delay repeatedly offered to Debtor's counsel at the outset.

31. Undeniably the travel restrictions resulting from Covid will require all parties to adapt and make appropriate extensions to the schedule. The Debtor has been and remains willing to produce responsive documents at a date proximate to his examination as is appropriate with a duces tecum request and to appear at a web or tele video deposition. Counsel for Ms. Beninati has made a similar offer.

32. All of the Trustee's pending discovery can and should be completed in sufficient time for the Trustee to determine if there are sufficient facts to interpose an objection to the Debtor's exemptions and discharge by the end of May 2020. This is particularly true in light of the fact that Sutton and Trustee's counsel have had access to relevant documents for several years and the alleged "suspicious" financial transactions referred to in the Application and Motion are explained within the body of those same documents.

33. Movants have failed to meet their burden of showing cause for the unnecessary delay they seek through the Motion. The Debtor and his family have born the burden of the failure of Sutton Place for four years. Beninati has lived under a $24 million judgment for three years and has

been subjected to extensive post judgment discovery at Sutton's hand. Beninati filed his voluntary petition under chapter 7 seeking to move on with his life with the promise of a fresh start offered under Title 11 of the U.S. Code.

34. The Court should consider the relative responsibility for the need for a delay. In this instance, the cause for the delay is not premised on anything that the Debtor did or failed to do. The Debtor has met every obligation in connection with this case. He filed his Schedules and Statements of Affairs with his voluntary petition. Those pleadings are thorough and detailed. Beninati voluntarily provided additional documents and records to meet the request of the Trustee. He was prepared to timely produce the documents requested in the Debtor 2004 Notice and appear for examination on April 6, 2020.

35. Sutton has been in possession of more than a thousand pages of documents obtained through post judgment discovery for years. For reasons known only to Sutton, Sutton took no action to enforce its judgment from the summer of 2017 until it filed the Domestication Proceedings in July 2019.

36. The Court must also weigh the relative burden of the requested delay upon the parties. Beninati is entitled to prompt administration of his bankruptcy so that he can start his economic life over. Movants can complete all of the pending discovery by mid May 2020 and take whatever actions are appropriate before the end of May 2020. The burden on the Movants of the schedule proposed by the Debtor is to complete three depositions within 30 days and to adapt to a different format for those depositions.

37. Movants allegations fail to meet the cause required under Bankruptcy Rule 9006. The requested relief seeks to impose the entire burden of the current Covid crisis upon the Debtor.

WHEREFORE PREMISES CONSIDERED, Joseph Beninati requests that this Court extend the Bar Dates through May 29, 2020 and deny Movant's further requested relief and grant the Debtor such other and further relief to which he may be justly entitled.

Respectfully submitted April 23, 2020

                                              THE LAW OFFICES OF RAY BATTAGLIA, PLLC.
                                              66 Granburg Circle
                                              San Antonio, Texas 78218
                                              Telephone (210) 601-9405
                                              Email: rbattaglialaw@outlook.com

                                              By: */s/ Raymond W. Battaglia*
                                                  Raymond W. Battaglia
                                                  Texas Bar No. 01918055

**ATTORNEYS FOR JOSEPH BENINATI**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by first class mail upon on the following parties on April 23, 2020

| | |
|---|---|
| Jay H. Ong<br>MUNSCH HARDT KOPF & HARR, P.C.<br>303 Colorado Street<br>Suite 2600<br>Austin, Texas 78701 | Via Email: jong@munsch.com |
| Phillip J. Conley, Esq.<br>CONLEY ROSENBERG & MENDEZ LLP<br>5080 Spectrum Drive, Suite 850E<br>Addison, Texas 75001 | Via Email: pjc@crm-lawfirm.com |

                                              By: */s/ Raymond W. Battaglia*
                                                Raymond W. Battaglia